**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**MARCH SESSION, 1998**

**FILED**

April 30, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9704-CC-00127** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **ROBERTSON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. ROBERT W. WEDEMEYER** |
| **GARRETT RAINES,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Rape of a Child) |

**ON APPEAL FROM THE JUDGMENT OF THE
CIRCUIT COURT OF ROBERTSON COUNTY**

FOR THE APPELLANT:

MICHAEL R. JONES
Public Defender

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

DARYL J. BRAND
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243-0493

JOHN CARNEY
District Attorney General

DENT MORRISS
Assistant District Attorney General
500 Souty Main Street
Springfield, TN 37172

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# <u>OPINION</u>

The Defendant, Garrett Raines, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He was convicted by a Robertson County jury of rape of a child.[1] The trial court sentenced him to sixteen years imprisonment with the Department of Correction. In this appeal, the Defendant argues that the trial court erred in determining that the child-victim was competent to testify and that the evidence was legally insufficient to support the verdict. We affirm the judgment of the trial court.

We begin with a summary of the pertinent facts. The State offered the testimony of three individuals at trial: Jackie Adams, the wife of the Defendant; B.A., the victim; and Julie Rosof, an employee of the Our Kids Clinic who examined B.A. after the commission of the offense.[2] The testimony of Jackie Adams principally concerned family background information. At the time of the offense, the Defendant had been married to Adams for approximately two and a half years. The victim in this case, four-year-old B.A., was Adams' child from a previous relationship. Adams also had a child by the Defendant and, at the time of the offense, was pregnant with the Defendant's second child. Adams' child by the Defendant was nearly three years old at the time of the offense. The family lived at Lemley Trailer Park from January of 1995 through early March of 1995. During January and early February, 1995, the Defendant worked various construction-related jobs with his stepfather. Jackie Adams did not work while

---

[1] Tenn. Code Ann. § 39-13-522.

[2] It is the policy of this Court not to refer to minor victims of sexual abuse offenses by name. Accordingly, we will refer to the victim in this case as "B.A." or simply as "the victim" throughout this opinion.

the Defendant was employed. During the latter part of February, 1995, the Defendant was not working. As a result, Jackie Adams began working a 7:00 a.m. to 3:00 p.m. shift at McDonald's.

Jackie Adams testified further that she noticed a change in the victim's behavior beginning in April, 1995. She stated that the victim began exhibiting anger and was essentially "mad at the world." On cross-examination, Adams identified Richard Holt as a friend of the family with whom her children had spent the night on several occasions. Adams admitted that it was possible her children may have seen x-rated movies on those occasions.

B.A., five years old at the time of trial, testified that he remembered living in a trailer with the Defendant and sharing a room with his stepbrother. B.A. stated that on one occasion, while his mother was at work, the Defendant "stuck his pig in my mouth." Upon further questioning, B.A. identified "pig" as the Defendant's "private." B.A. testified further that the Defendant "told me the stuff that came out of his pig was mayonnaise." On this occasion, B.A. stated that he was in bed with his clothes off and that the Defendant had his clothes off as well. B.A. testified that he did not tell anyone about the incident immediately afterwards because it was a secret. Eventually he told his mother about the incident and they moved out of the trailer. On cross-examination, B.A. identified the Defendant as his "Daddy," stated that he loved his Daddy and that he wanted his Daddy to come home.

The only other witness to testify for the State was Julie Rosof. Rosof was an employee of the Our Kids Clinic and, on April 10, 1995, conducted a physical

examination of B.A. in response to a report of possible sexual abuse. Rosof testified that B.A.'s physical evaluation was normal and that it revealed nothing to indicate sexual abuse. Rosof stated, however, that she would not expect to find evidence of oral penetration and ejaculation once several hours had passed from the time of the incident.

The Defendant, thirty-three years old at the time of trial, testified in his own defense. He stated that he began living with B.A. when the child was only five months old. The Defendant denied ever having had sexual contact with the victim. On cross-examination, he admitted that he had been convicted of larceny from the person in Davidson County Criminal Court on July 26, 1984.

The Defendant was indicted on July 27, 1995. Included in the indictment were four counts: two for rape of a child and two for aggravated sexual battery. The two aggravated sexual battery counts were dismissed, with the agreement of the State, immediately prior to trial. The Defendant was tried from February 12 to February 13, 1996. One count of rape of a child was dismissed after the completion of the presentation of proof at trial, again with the agreement of the State. The remaining count of the indictment charged the Defendant with rape of a child during February, 1995. After considering the proof presented at trial, the jury found the Defendant guilty as charged.

In his first issue on appeal, the Defendant argues that the trial court erred in determining that B.A. was competent to testify. As we stated above, B.A. was five years old at the time of trial. The Defendant contends that the record does not demonstrate that B.A. understood the nature of his oath. As a result, he

argues that the trial judge abused his discretion in finding B.A. competent to testify.

Rules 601 and 603 of the Tennessee Rules of Evidence provide guidance regarding issues of competency of witnesses to testify. Rule 601 states that "[e]very person is presumed competent to be a witness except as otherwise provided in these rules or by statute." Tenn. R. Evid. 601. Rule 603 provides that "[b]efore testifying, every witness shall be required to declare that the witness will testify truthfully by oath or affirmation, administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so." Tenn. R. Evid. 603.

In the case sub judice, the Defendant does not suggest that a statute or another rule of evidence alters the application of the presumption of competence afforded B.A. by the operation of Rule 601. With regard to determinations of a child's competency to testify, our supreme court has stated the following:

> When examining a child's competency to testify a judge should determine whether the child understands the nature and meaning of an oath, has the intelligence to understand the subject matter of the testimony, and is capable of relating the facts accurately.

State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993) (citing State v. Fears, 659 S.W.2d 370 (Tenn. Crim. App. 1983)). In addition, the question of competency to testify is a matter entrusted to the sound discretion of the trial judge, who has the opportunity to observe the witness firsthand, and that discretion will not be disturbed on appeal absent abuse. State v. Caughron, 855 S.W.2d 526, 538 (Tenn. 1993), cert. denied, 510 U.S. 979, 114 S.Ct. 475, 126 L.Ed.2d 426 (1993); State v. Howard, 926 S.W.2d 579, 584 (Tenn. Crim. App. 1996).

In the present case, the trial court questioned B.A. during a jury-out hearing. During this questioning, B.A. stated that he knew the difference between telling the truth and telling a lie. To test this statement, the trial judge asked B.A. simple questions regarding statements about a red piece of clothing. The trial judge asked B.A. if stating the clothing was blue would be the truth or a lie, and B.A. responded the statement would be a lie. The trial judge next asked B.A. if stating the clothing was red would be the truth or a lie, and B.A. responded the statement would be the truth. Upon further questioning, B.A. stated that it was better to tell the truth than to tell a lie and that if he did not tell the truth, he would go to jail. B.A. testified that going to jail was a bad thing and that he did not want to go to jail. Thus, B.A. stated that he was going to tell the truth when asked questions by the attorneys at trial. After hearing B.A.'s testimony, the trial court found him competent to testify.

From this record, we can only conclude that the trial judge did not abuse his discretion in finding B.A. competent to testify. The purpose of determining competency of a child witness to testify in sexual abuse cases "is to allow a victim to testify if it can be determined that the child understands the necessity of telling the truth while on the witness stand." Ballard, 855 S.W.2d at 560. Through questioning, the trial court determined that B.A. knew the difference between truth and falsehood and that he intended to tell the truth during questioning by the attorneys at trial. We believe that the trial court's colloquy with B.A. demonstrated that B.A. understood the necessity of telling the truth while on the witness stand. See Ballard, 855 S.W.2d at 560; Howard, 926 S.W.2d at 584. Accordingly, we conclude that the trial court did not err in allowing the child to testify. The Defendant's first issue is therefore without merit.

-6-

In his second issue on appeal, the Defendant argues that the evidence was legally insufficient to support the verdict. When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

Applying these principles to the case sub judice, we believe that the evidence was legally sufficient to support the verdicts. Rape of a child is defined as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Tenn. Code

Ann. § 39-13-522(a). Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7).

At trial, B.A. related that the Defendant stuck "his pig in my mouth." B.A. stated that by "pig" he meant the Defendant's "private," demonstrating where the "private" would be on a toy bear. B.A. testified further that the Defendant "told me the stuff that came out of his pig was mayonnaise." As we stated above, a physical examination conducted on the victim more than a month after the alleged incident revealed nothing to indicate sexual abuse. The examiner, however, stated that she would not expect to find evidence of oral penetration or ejaculation once several hours had passed. In his own defense, the Defendant denied ever having had sexual contact with the victim. He also offered evidence of an alleged recantation by the victim. In particular, the Defendant testified that he met with Jackie Adams and B.A. after they had moved out of the trailer following the incident. The following colloquy occurred during the Defendant's testimony:

> Q. And at that meeting at that motel, B[.A.] told you that, indeed, you had done those things, didn't he?
> A. He told me no and then he said yes.
> Q. Okay -- well, he told you both ways, but at any rate, it was clear to you that he was accusing you of that at that time, wasn't it?
> A. Yes, sir.

The Defendant contends that, in light of his testimony, the State's proof was legally insufficient to support the verdict.

-8-

The proof in the present case posed a credibility question for the jury to resolve. The victim related an incident of oral penetration, while the Defendant denied sexual contact. From the verdict, it is clear the jury resolved the credibility question against the Defendant. While the Defendant's testimony concerning a possible recantation by the victim was relevant, its impact on the credibility of the victim's testimony was a matter to be determined by the jury. Obviously the jury found the victim's testimony to be persuasive, even in light of the Defendant's testimony about a possible recantation. From this record, we cannot conclude that the evidence was legally insufficient to support the jury's verdict. The Defendant's second issue is therefore without merit.

For the reasons set forth in the discussion above, we conclude that the Defendant's issues on appeal lack merit. We therefore affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOSEPH M. TIPTON, JUDGE


_____
JOE G. RILEY, JUDGE